# Commonwealth v. Philadelphia & Reading Coal & Iron Co. et al., Appellants.

*Taxation—Anthracite coal—Assessment of tax—Market value—Interstate commerce—Act of May 11, 1921, P. L. 479—Constitution—Special law—Classification—Uniform taxation.*

1. The Anthracite Coal Tax Act of May 11, 1921, P. L. 479, is constitutional, and not forbidden classification or special law.

2. Anthracite coal is a proper subject for classification under the Constitution, and such coal mined and ready for shipment is taxable so long as it remains in possession of the mine owner.

3. Where the number of tons prepared for market each day is approximated as nearly as conditions permit, and this estimate checked up and corrected later, such action substantially complies with the requirements of sections 1 and 2 of the Act of May 11, 1921, P. L. 479, and constitutes an assessment as of the day the coal was mined.

4. Such an assessment made at the mines although checked up later is not a tax on transportation, nor a tax on interstate commerce, although the final checking up is made while the coal is in transportation.

5. It cannot be alleged that the tax so assessed violated the constitutional provisions requiring taxes to be uniform on the same class of subjects, because the daily price per ton of coal prepared for market was not uniform at the various mines.

Argued September 26, 1923. Appeals, Nos. 13-16, by defendants, from judgments of C. P. Dauphin Co., Commonwealth Docket, 1922, Nos. 28, 112-14, on verdicts for plaintiff in cases tried by the court without a jury in suits of Commonwealth v. Philadelphia & Reading Coal & Iron Co., Alliance Coal Mining Co., Cranberry Creek Coal Co. and Lehigh Coal & Navigation Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeals from tax settlements. Before HARGEST, P. J., WICKERSHAM and FOX, JJ., without a jury.

Judgments for plaintiff, 25 Dauphin Co. R. 508. Defendants appealed.

*Errors assigned* were, inter alia, judgments, quoting them.

*Wm. Clarke Mason,* with him *John T. Brady* and *Charles Heebner,* for Philadelphia & Reading Coal & Iron Co., appellant, and *Wm. Clarke Mason,* with him *George P. Orlady* and *Wm. Jay Turner,* for Lehigh Coal and Navigation Co. et al., appellants.—A tax cannot be assessed on anthracite coal in accord with the provisions of the Act of May 11, 1921, P. L. 479, unless the tonnage and value of the coal is accurately ascertainable on the day it is prepared and ready for shipment and market: Schmuck v. Hartman, 222 Pa. 190; Williamson's Est., 153 Pa. 508; Phila. & Reading C. & I. Co. v. Commissioners, 229 Pa. 460.

It was not lawful to assess a tax on anthracite coal which had been mined by appellants after it had been delivered to the railroad carrier and had started on its interstate journey.

These judgments violate the uniformity clause of the Constitution: Knisely v. Cotterel, 196 Pa. 614; Phila. Contributionship for Insurance v. Com., 98 Pa. 48; Ruan Street, 132 Pa. 257; Banger's App., 109 Pa. 79; People v. Weaver, 100 U. S. 544; Raymond v. Traction Co., 207 U. S. 20; Dundee, etc., Co. v. Parrish, 24 Fed. 197; Chicago Union Trac. Co. v. State Board of Equalization, 112 Fed. 607, 114 Fed. 557.

The sole provision for assessing the tax is contained in section 2 and when this section falls, because of the constitutional objections, the whole act becomes void: Central of Georgia R. R. v. Wright, 207 U. S. 127; Turner v. Wade, 254 U. S. 64.

*John Robert Jones,* Deputy Attorney General, with him *George W. Woodruff,* Attorney General, for appellee.—The assessment was proper: Com. v. Del. Div. Canal Co., 123 Pa. 594.

Absolute accuracy in the ascertaining of the value of property is no more a legal requisite in taxation than is absolute equality: Mineral R. R. & Mining Co. v. Northumberland County, 229 Pa. 436; Insurance Co. v. Yard, 17 Pa. 331; Lehigh Val. Coal Co. v. Luzerne County, 255 Pa. 17.

The assessment was lawful although the coal subsequently entered into transportation: Rockhill I. C. Co. v. Fulton County, 204 Pa. 44.

No settlement involved in these appeals was made in which a tax was imposed on coal which had no market value on the day specified for assessment: Phila. & Reading C. & I. Co. v. Co. Com'rs., 229 Pa. 460.

The settlements of taxes made against appellants are not in violation of section 1, article IX, of the Constitution: Com. v. Canal Co., 123 Pa. 594.

The settlements of taxes made against appellants are not in violation of the commerce clause of the Federal Constitution: Heisler v. Colliery Co., 67 U. S. L. E. 119.

The settlements of taxes made against the appellants are not in violation of section 1 of the 14th Federal Amendment: Bell's Gap R. R. v. Com., 134 U. S. 232; Merchants & Mfrs.' Nat. Bank v. Penna., 167 U. S. 461; Magoun v. Bank, 170 U. S. 283; Keeney v. New York, 222 U. S. 525; St. Louis S. W. Ry. v. Arkansas, 235 U. S. 350; Maxwell v. Bugbee, 250 U. S. 525.

OPINION BY MR. JUSTICE FRAZER, January 7, 1924:

These four appeals raise practically the same questions and were argued together. Defendants, owners and operators of anthracite mines in Pennsylvania, respectively filed with the auditor general a report of coal mined and prepared for market during the period from July 1, 1921, to December 31, 1921, as required by Act of May 11, 1921, P. L. 479. Each report, made on a form prescribed by the auditor general, contained the number of tons of coal of the various kinds prepared monthly for market by the company during the period covered

by the report, with the assessed value of the product and amount of tax chargeable at the rate prescribed by the statute. The reports were accompanied by affidavits averring returns were filed under protest in an attempt to comply with the Act of 1921, but that the value and rates given were not based on daily assessment, but on information obtained subsequent to the coal having been prepared for market. The auditor general made settlements against the several defendants, based on the figures contained in the reports, which settlements were duly approved by the state treasurer. Defendants appealed from the action of the Commonwealth's accounting officers, to the Court of Common Pleas of Dauphin County, claiming the assessment and collection of the tax was unlawful. The case was tried by agreement before the court without a jury, and judgment entered in favor of the Commonwealth against each defendant for the amount of tax charged in the statement of the accounting officers. Exceptions filed to the several decrees were overruled and from judgments entered defendants appealed.

The constitutionality of the Act of 1921 was upheld in Heisler v. Thomas Colliery Co., 274 Pa. 448, 67 U. S., L. Ed. 119, where anthracite coal was held to be a proper subject for classification under the provisions of the Constitution and that such coal mined and ready for shipment was taxable so long as it remained in possession of the mine owner. The questions here involved arise under section 1 of the Act which imposes a tax on anthracite coal at the rate of $1\frac{1}{2}\%$ "of the value thereof when prepared for market, which said tax shall be assessed at the time when said coal has been mined, washed or screened and is ready for shipment or market," and section 2 which requires the superintendent, or other officer in charge of the mine, to assess the tax from time to time "as the coal is mined, washed or screened and is ready for shipment or market and to ascertain and assess

daily the number of gross tons of coal mined, washed or screened and to fix the value thereof."

Defendants were without mine scales for weighing coal as mined and the court below found an expense of from $300,000 to $400,000 necessary to equip their mines with such scales. The mined product, for which there was immediate sale, was loaded on railroad cars at the collieries and transported to the most convenient railroad scales to be weighed and the weights so ascertained were furnished the mining companies in the course of a few days. Coal for which there was no immediate market either remained in pockets at the breaker or was loaded on cars to await shipment, to a purchaser or to a storage place, and subsequently, if stored, reloaded as needed for market. An approximate estimate of daily tonnage was made by taking the marked capacity of railroad cars loaded, amount of coal in pockets at the mine and the capacity and number of mine cars dumped at the breaker. This procedure constituted a permanent record which was subsequently checked up with the actual weights received from railroad scales. In this manner a fairly accurate estimate of daily tonnage was obtained, though it might vary from the actual amount from five to twenty per cent, depending upon conditions; the court, however, found a variance in tonnage could later be checked up and the total tonnage for the entire period determined, and estimates corrected previous to filing reports.

The contention of appellants is that, inasmuch as the exact number of tons prepared for market was not definitely determined and not ascertained daily, the method of taxation provided by the statute for assessment of the tax was impossible of execution; that the resulting assessment was not uniform and by ascertaining the exact tonnage at a later date actual imposition of the tax did not occur until that time, the coal having in the meantime passed into custody of the carrier on its journey in interstate commerce, hence, a tax was imposed on

that commerce; and further that ascertaining the market value of coal at the time mined was impossible, unless by sale actually made on that day, and that such delay resulted in taxation made at a subsequent time, often weeks or months later, and at a time when the coal may have been in course of transit to other states, and, accordingly, beyond the taxing power of this State.

Absolute accuracy in the assessment of taxes is impossible of attainment. If such were required in cases similar to the present, the effect would be to prevent taxation altogether or render the process of assessment so expensive as to impose an unnecessary burden on either the individual taxed or the public, depending upon whether the duty of making the assessment was delegated to the person or corporation taxed or to the officers of the Commonwealth. The evidence here indicates it to be within the power of defendants, by an expenditure of a large sum of money, to prepare accurate daily records of taxable coal. For the purpose of their own business records they deemed such expense inadvisable. They were satisfied with an approximate daily mining record which they subsequently corrected, on accurate figures becoming available. Can they now consistently claim exemption from taxation because the method adopted for their own convenience failed to furnish daily absolutely correct data? Or must the act be held unconstitutional because it permits a return made from data shown by the books of the taxable, rather than require the latter to expend a considerable sum of money, neither required nor justified by business conditions? We think such conclusion neither justifiable nor necessary. "Common sense and practical every-day business experience are the best guides for those intrusted with the administration of tax laws. Taxation is a practical and not a scientific problem": Phila. & Reading Coal Co. v. Northumberland County Comm'rs., 229 Pa. 460, 471. Substantial justice and approximate accuracy is the utmost that can be expected. Where the number of tons pre-

pared for market each day was approximated as nearly as conditions permitted and this estimate checked up and corrected later, such action substantially complied with the requirements of the act and constituted an assessment as of the day the coal was mined.

The argument that, because all coal mined and prepared for market on a particular day was not sold, no market value for the part unsold existed cannot be sustained. A commodity, such as anthracite coal, used and sold daily in all parts of the country, at wholesale and retail, cannot be said to be without value simply because the producer or dealer may not be able to sell his entire output or stock on each day or within a definite period of time. If defendants sold a portion of the coal produced on a particular day at a specified price, thus establishing a market value for the part sold, they surely cannot be heard to say the mere fact that a portion remained unsold and on hand rendered that portion worthless or without market value. The act taxes coal mined and prepared for market, not coal actually sold. In view of the undoubted marketability of anthracite coal at all times, the finding of the court below that the officer in charge of the mine had at hand, or could readily have secured, information by which the daily value of the coal for the purpose of making the assessment was obtainable, is fully supported by the testimony.

It is contended further that inasmuch as the daily price per ton of coal prepared for market was not uniform at the various mines, the tax as assessed violated the provision of the constitution requiring taxes to be uniform on the same class of subjects. While it appears the price of coal of a particular standard, or quality, at one mine might vary somewhat from the price of the same quality of coal at another mine, a variance of this character does not necessarily signify a lack of uniformity in values. The value may depend, not only on the quality of a specific grade of coal, but on its proximity to market, on shipping facilities, the trade name

under which mined and shipped and known to the public and many other elements tending to affect the price at a special mine. Difference in ton prices, under such circumstances, certainly falls short of establishing a lack of uniformity in taxation. On the contrary, if a ton of coal of a peculiar grade was worth more at one mine than at another in a different locality, this difference was a proper matter to be considered in determining its value for purposes of taxation. An assessor must take into consideration every element affecting the value of property subject to taxation and so long as the rate is uniform nothing more can be required. Absolute equalty of taxation never has been and never will be attained where the question of value necessarily depends on human judgment: Com. v. Delaware Div. Canal Co., 123 Pa. 594; Mineral R. R. & Mining Co. v. Northumberland County Com'rs., 229 Pa. 436. So long as there is substantial uniformity in the application of taxing statutes the uniformity clause of the Constitution is not violated.

It follows from the foregoing conclusions—(1) that assessments made before removal of the coal from defendants' properties cannot be said to be a tax on interstate commerce; (2) that daily tonnage estimates where subsequently checked up and verified by weights received from the carrier does not change or invalidate the time of assessment; (3) the property taxed was coal at the mine prepared for market, not coal in course of transportation or at a distant point; and (4) that the tax imposed by the Act of 1921 is a proper exercise of the Commonwealth's authority has already been decided by this court in Heisler v. Thomas Colliery Co., supra.

The judgment in each case is affirmed at costs of appellants.