# Commonwealth *v.* Hudson Coal Co., Appellant.

*Taxation—Coal—Anthracite and bituminous — Classification — Evidence—Act of May 11, 1921, P. L. 479—Constitutional law.*

1. So far as concerns the classes into which commodities may be arranged, for purposes of taxation, the matter is one for the legislature and not for the courts.

2. The courts should not interfere with the legislative classification of property for taxation, unless they can say with reasonable

certainty that the grouping made by the legislature is purely illusory, and clearly intended as an evasion of the Constitution.

3. The mere existence of a doubt does not justify the interference of the court with the rights of the legislature.

4. The classification of anthracite coal as distinguished from bituminous coal, for purposes of taxation, provided by the Act of May 11, 1921, P. L. 479, and confirmed as constitutional by Heisler v. Thomas Colliery Co., 274 Pa. 448, is not in any way affected by additional evidence offered to show that the two classes of coal are only separated into groups depending upon the use to which each is to be put, that the two names are adopted merely to designate the various uses to which the coal is to be put, and are interchangeable, no use being made of one which cannot be made of the other, and that the anthracite and bituminous beds are merged and continuous in the part of the State where found, without definite point of separation.

Argued May 25, 1926.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 14, May T., 1926, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1925, No. 32, on directed verdict for Commonwealth in case of Commonwealth v. Hudson Coal Co.   Affirmed.

Appeal from tax settlement.   Trial by jury before HARGEST, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for Commonwealth for $43,-530.21.   Defendant appealed.

*Error assigned* was rejection of evidence offered by defendant, quoting record.

*John Hampton Barnes,* with him *Wm. S. Snyder* and *Walter C. Noyes,* for appellant, cited: Com. v. Coal Co., 251 Pa. 134; Heisler v. Colliery Co., 274 Pa. 448; Mahon v. Coal Co., 274 Pa. 504; Seabolt v. Commissioners, 187 Pa. 318; Nolan v. Jones, 263 Pa. 124; Second Nat. Bank v. Hoffman, 229 Pa. 429; Fuher v. Coal Co., 272 Pa. 14.

*John Robert Jones,* Special Attorney for the Commonwealth, with him *George W. Woodruff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE FRAZER, June 26, 1926:

Defendant corporation is engaged in mining coal, and duly filed its report with the auditor general, of anthracite coal mined at its Olyphant Colliery in Lackawanna County, during the year 1922, in accordance with the provisions of the Act of May 11, 1921, P. L. 479, requiring such report and imposing a tax of one and one-half per cent on all such coal "when prepared for market," the tax being "assessed at the time when said coal has been mined, washed or screened and is ready for shipment to market." The tax based on the report submitted, amounting to $43,429.62, was duly assessed against defendant, by the Commonwealth's accounting officers, from which assessment an appeal was taken to the Common Pleas of Dauphin County. At the trial defendant, in an attempt to differentiate the case from that of Heisler v. Thomas Colliery Company, 274 Pa. 448 (affirmed by the United States Supreme Court, 260 U. S. 237) in which we held the Act of 1921 to be a proper classification of anthracite coal for the purpose of taxation, made offers of proof containing 26 paragraphs, each of which, it is claimed, presented a point of similarity between anthracite and bituminous coal, and tended to show the two varieties were not properly the subject of separate classification and consequently the tax imposed by the Act of 1921 is unconstitutional. The substance of the proposed evidence is that coal in Pennsylvania is not divided into two general classes known as anthracite and bituminous, as commonly supposed, but separated into groups depending upon the use to which it is to be put such as domestic consumption, fuel for steam, gas manufacture, or locomotives, etc.; that the anthracite and bituminous coal beds are merged and continuous in the part of the State where found, without

definite point of separation, and the two names are
adopted merely to conveniently designate the various
uses to which the coal is to be put and are interchange-
able, no use being made of one which cannot be made of
the other. The court below refused to admit this evi-
dence, and directed the jury to return a verdict in favor
of the Commonwealth, on the ground that, even if ad-
mitted, the evidence is insufficient to overcome the dis-
tinctions between the two classes of coal pointed out in
the Heisler Case, and would not establish, with reason-
able certainty, that the classification made by the act of
assembly is illusory, arbitrary and without reasonable
basis.

In Heisler v. Thomas Colliery Co., supra, the findings
were summarized in the opinion of this court as follows
(p. 460) : " 'Anthracite coal differs from bituminous coal
in the following physical properties: The amount of
fixed carbon, the amount of volatile matter, color, lustre
and structural character. The percentage of fixed carbon
in anthracite coal is much higher, the percentage of
volatile matter is much lower than in bituminous coal.
Anthracite coal is hard, compact and comparatively
clean and free from dust and is commonly termed 'hard
coal,' while bituminous coal is very much less hard, and
is dusty and dirty and is commonly termed 'soft coal,'
[hence] bituminous coal burns with more or less smoke
while anthracite coal burns with practically no smoke.

" 'The fuel ratio......of bituminous coal differs from
that of anthracite coal; as the fuel ratio of bituminous
coal rises the coal is more soft, as the fuel ratio of an-
thracite coal rises the coal is more hard.

" 'Sixty-one per cent of anthracite coal produced in
Pennsylvania is used for domestic purposes and substan-
tially all anthracite coal is used for fuel in the pro-
duction of heat for domestic purposes and of steam for
domestic purposes and for power; but bituminous coal
is used not only for fuel but as a raw material from

which a great number and variety of commercial products are manufactured.

" 'A small percentage of anthracite produced in Pennsylvania is used in the production of gases, known as water-gases and producer-gas. Said gases, which are also produced from coke, are of a different character from that produced from bituminous coal, [the latter] known as coal gas, is produced from the volatile matter in said coal; [in addition] a large amount of bituminous coal produced in Pennsylvania is used in the production of gas for fuel and illumination in addition to the gas produced in connection with the manufacture of coke.' "

The opinion then proceeds as follows (page 461): "For more than sixty years Congress has taxed anthracite and bituminous coal differently, as has the Canadian parliament for upwards of thirty-five years; and the general assembly of this State has repeatedly legislated for the two classes separately, as well regarding the regulation of mining as the weights at which the coals may be sold (see Acts May 18, 1878, P. L. 67; June 2, 1891, P. L. 176; June 26, 1895, P. L. 334; June 9, 1911, P. L. 755; May 27, 1921, P. L. 1198); as a result of these and other factors relating to market value, 'the price of anthracite coal on cars at the mines is ordinarily much larger than the price of bituminous coal on cars at the mine, the difference resulting largely from difference in rates of royalty and cost of production and preparation for market.'

"It is, of course, true, as pointed out in Com. v. Alden Coal Co., 251 Pa. 134, 141-2, that a difference in price would not alone justify a separate classification; but when it appears that the price varies because of the causes above pointed out, and that the life histories of the two kinds of coal are essentially different, during some of the time before and much of the time after man seeks to reduce them to possession, surely the courts could not properly say that their separate classification 'violates the Constitution, clearly, palpably, plainly and

in such manner as to leave no doubt or hesitation in our minds.' "

We have carefully examined and considered the rejected offer of evidence and in our opinion it sets out no circumstance or condition which tends to show the above facts,—which formed the basis of the decision in the Heisler Case,—do not continue to exist or do not apply equally to the circumstances here involved. The argument of appellant is that the facts in the Heisler Case failed to include all relevant matters which should be considered in determining the validity of the classification and that there exists additional facts which should be known and considered by the court in determining the question set out in the rejected offer. In other words, the contention is that the jury should have been permitted to pass on the additional facts here presented, and if they found no reasonable ground for classification existed, it would be the duty of the court to declare the act unconstitutional, notwithstanding the classification has heretofore been sustained as constitutional: Heisler v. Thomas Colliery Co., supra; Com. v. Phila. & Reading Coal & Iron Co., 278 Pa. 338, affirmed by U. S. Supreme Court, 000 U. S. 000. The effect of this contention would be to require submission to the jury, in each case as it arises, of the question whether or not a reasonable basis of classification exists, which condition of affairs would continue as long as the ingenuity of counsel and chemists are able to conceive additional points of similarity of the two kinds of coal and their uses, not thought of or presented on previous trials. Such illogical result is avoided, however, when we bear in mind that, so far as concerns the classes into which commodities may be arranged for purposes of taxation, the matter is one for the legislature and not for the courts; and it is not our duty nor within our power to classify, nor should we interfere with the legislatures' classification of property, unless we can say with reasonable certainty that the grouping made by that body is purely illusory, and

clearly intended as an evasion of the Constitution. The facts present in the Heisler Case, tending to show dissimilarity between the two kinds of coal must be presumed to continue to exist, and as we there held them sufficient to warrant classification, the only effect proof of additional facts showing points of similarity can have, is to raise a doubt in the minds of court and jury. The mere existence of such doubt does not justify our interference with the rights of the legislature by substituting our judgment for that of the members of that branch of the government.

The judgment is affirmed.