## Phonograph Operators Association v. City of Philadelphia et al.

84

*Edward A. Kelly*, for plaintiff.

*Abraham Wernick*, for defendants.

*W. Bradley Ward*, amicus curiæ, for Amusement Machines Association of Philadelphia.

OLIVER, P. J., May 4, 1945.—In its bill plaintiff alleges that the ordinance of the City Council of the City of Philadelphia, approved by the mayor of that city on February 23, 1945, imposing an annual tax on "any machine or device for amusement or entertainment, which is operated by the insertion of a coin or token representing such coin," violates the statute law of Pennsylvania governing cities of the first class, in that unlawful powers are given to the city treasurer; also, that the tax is unreasonable and confiscatory and that it is based upon an unfair and unjust classification. Plaintiff prays that the city treasurer be re-

strained from proceeding or attempting to proceed with the collection of any taxes imposed by the ordinance and that the ordinance be declared null and void.

In their answer defendants deny all of the above allegations and ask that the bill be dismissed.

### Findings of fact

The chancellor makes the following findings of fact:

1. Phonograph Operators Association is an unincorporated and voluntary association of owners of phonographs electrically operated, which machines produce music from phonographic records by the deposit of a coin in the slot of said machine; the said association having its principal office at 1505 Race Street, in the City and County of Philadelphia.

2. The association consists of approximately forty-seven members, each of whom is required to own not less than five of the said phonographic machines, which are commonly known as "juke boxes".

3. The purpose of the association is for the interchange of ideas relating to the distribution of the said juke boxes among various places in the City and County of Philadelphia.

4. The said machines or juke boxes are placed by the owners thereof in places known as "locations", such as cafés and similar enterprises, with the consent of the operator of the location.

5. In the said juke box industry, the owner of the juke box or phonographic machine is known as "owner or operator"; and the operator of the café or place of business where the juke box or machine is placed is known as "the location".

6. The owner or operator of the juke box or phonographic machine receives one half of the income realized from each machine and the location receives one half.

7. On February 23, 1945, an ordinance was adopted by Council of the City of Philadelphia, the title of which

provides that a tax is imposed for the use for profit of certain machines or devices for amusement or entertainment, which are operated by the insertion of a coin or token representing such coin; providing for the collection thereof and for the registration of such machines or devices and imposing penalties.

8. The first section of the ordinance imposes an annual tax, at the rate specified later, on all persons, firms, corporations, or associations using or permitting the use for profit in the City of Philadelphia of any machine or device for amusement or entertainment, which is operated by the insertion of a coin or token representing such coin.

9. Section 2 of said ordinance provides that the tax shall be an annual tax of $20 for each machine or device played with pins and balls or either of them; and $20 for each other machine or device of the kind and character made taxable.

10. Section 3 of the ordinance provides that every person, firm, corporation, or association owning, having, or possessing any such machine or device now used or permitted to be used for profit, shall, on or before March 1, 1945, register with the city treasurer the said machine or device and shall, at the time of such registration, pay the tax thereon for the year 1945; and shall, on or before January first of each current year thereafter, pay the said tax for each such current year.

11. Section 4 of the ordinance provides that each application for the registration of any such machine or device shall describe and give the serial number thereof, and the city treasurer shall, at the time of the payment of the tax therefor, issue a label, disc, or tag for the calendar year for which the tax has been paid, which label, disc, or tag shall be attached by the owner or operator to the machine or device for which it has been issued. It further provides that it shall be unlaw-

ful to use or permit to be used for profit any such machine or device for which the tax has not been paid or to which the label, disc, or tag is not attached and no label, disc, or tag shall be attached to any machine or device except that for which it has been issued or beyond the year for which it was so issued.

12. Section 5 of the ordinance provides for certain penalties to be added in case the tax is not paid before the date fixed.

13. Section 6 of the ordinance provides that the department of law, when requested by the city treasurer, shall proceed for the collection of the delinquent taxes, costs, and interest.

14. Section 7 of the ordinance provides that any person, firm, corporation, or association violating any of the provisions of the ordinance or failing to pay the tax on any machine or device and registering the same with the city treasurer or permitting the said machine or device to be used without having attached thereto or thereon the required label, disc, or tag, shall be subject to a fine or penalty not exceeding $100, together with imprisonment not exceeding 30 days if the amount of said fine and costs shall not be paid within 10 days from the date of imposition thereof.

15. Section 8 of the ordinance provides that the city treasurer is authorized and directed to make and keep such records, prepare such forms, and take such other measures as may be necessary or convenient to carry the ordinance into effect.

16. There are approximately 3,300 phonographic machines or juke boxes distributed in various locations throughout the City of Philadelphia.

17. The average gross income from a machine is $12 per week, one half of which is retained by the owner of the location in which the machine is placed, who is known in the industry as the "location"; and the other half is collected by the owner of the machine, who is known in the industry as "owner or operator".

18. On or about February 25, 1945, the city treasurer adopted regulations, in pursuance of the authority given to him in said ordinance, which provided that the application for the registration of any such machine or device covered by the ordinance shall be made in person at the office of the city treasurer, giving the name and address of the applicant, the type of machine, the manufacturer and serial number of each machine and, upon presentation of such application, a bill will be issued which must be presented to the receiver of taxes in Room M-1, City Hall Annex, and the tax paid to the receiver of taxes and, upon payment of the tax to the receiver of taxes, he will receipt the bill; and upon presentation of the receipted bill at the office of the city treasurer certificates or labels will be issued to the taxpayer, with instructions for their display.

19. The city treasurer also prepared forms of bills which required the tax to be paid to the receiver of taxes and also prepared a label, which was to be affixed to each phonographic machine.

20. The city treasurer conferred with the city controller on the ordinance and his ideas as to how it should be handled; but the city controller has not made known to the court any objection thereto or to the validity of the ordinance and has not intervened in these proceedings.

## Discussion

There is no provision in the ordinance that the tax must be paid to the city treasurer. In order so to construe the ordinance the words "to the City Treasurer" would have to be read into it. The mere fact that the ordinance requires payment of the tax at the time the machine or device is registered with the city treasurer does not necessarily mean that the tax is to be paid to the city treasurer at the time of registration. There are many instances in which an application for a tax is made in one department and a bill rendered by such

department, which must then be presented to the receiver of taxes for payment. Neither is there anything unusual in the requirement that the taxpayer must thereafter return to the department where the application was made in order to obtain the insignia or label to be pasted on the machine.

If the intention was to make the tax payable "to the City Treasurer", we would expect to find those words inserted in section 3 after the words "pay the tax thereon for the year 1945", also in section 4 after the words "at the time of payment of the tax therefor", and in section 7 after the words "failing to pay the tax".

There is a legal presumption that the legislative body, city council, intended to comply with the provisions of the Philadelphia City Charter Act of June 25, 1919, P. L. 581, which require that all city taxes shall be paid to the receiver of taxes. This is specifically provided for by section 52(*3*) of the Statutory Construction Act of May 28, 1937, P. L. 1019. See 46 PS §552 and cases therein cited; also 59 C. J. 1008.

Even if there were any ambiguity in this regard, it would be the duty of the court to construe the ordinance so that it will provide for the payment of taxes to the receiver of taxes, as required by law. See Commonwealth v. Peoples et al., 345 Pa. 576, Commonwealth v. Charles, 114 Pa. Superior Ct. 473, and Commonwealth v. Lowe Coal Co., 296 Pa. 359. There certainly would be no justification for the court inserting in the ordinance the words "to the City Treasurer", where the result of so doing would clearly be to make the ordinance invalid.

The type of tax imposed by any taxing statute or ordinance may usually be determined by its title, which is part of the ordinance. See Peoples Natural Gas Co. v. Pittsburgh et al., 317 Pa. 1, and Duquesne Light Co. v. City of Pittsburgh, 251 Pa. 557.

The tax imposed by the ordinance now before us is clearly against the use for profit of certain machines

or devices, for amusement or entertainment, which are operated by the insertion of a coin or token representing such coin. The Sterling Act of August 5, 1932, P. L. 45, 53 PS §4613, gives authority to the City of Philadelphia to impose taxes on persons, transactions, occupations, privileges, subjects, and personal property within the limits of the city. In Blauner's, Inc., et al. v. Philadelphia et al., 330 Pa. 340, it was held that under the Sterling Act the taxing power of the Commonwealth of Pennsylvania has been delegated to the City of Philadelphia; and, except as restricted by constitutional limitations, is as broad as the taxing power of the State itself. Therefore, we find that city council was within its authority in imposing a tax on the use for profit of certain machines or devices, for amusement or entertainment, which are operated by the insertion of a coin or token representing such coin. The use of personal property has been taxed many times both by statute and ordinance. Clearly, reading this ordinance as a whole, it is apparent that the tax is imposed upon persons who use the machines for profit, but it is not a tax on the person but a privilege tax for the right to use the machines for profit.

While the open-air parking lot tax was imposed on all transactions in and for the parking of automobiles on open parking lots, the ordinance provided that the tax should be due from the person, firm, corporation, or corporations conducting such lots. It was held, however, that the tax was upon the transaction and not upon the person or the property. See Philadelphia v. Samuels, 338 Pa. 321, and Philadelphia v. Sley System Garages, Inc., 342 Pa. 142. Similarly, the sales tax ordinance imposed a tax on all sales and required payment thereof to be made by the vendee to the vendor, and by the latter to the city if he failed to collect. However, in Blauners, Inc., et al. v. Philadelphia et al., 330 Pa. 342, our Supreme Court held (p. 347) :

"The sales tax is imposed upon the transaction whereby property is acquired; the mercantile tax is an imposition for the privilege of doing business," and at page 345, ". . . the tax being on the sale itself, if the City Council had the power to make the levy, and it had that power if there was no duplication, it could require either party [meaning vendor or vendee] to the sale to pay the tax."

Under the ordinance before us, while the tax is upon the right to use for profit the machine or device, the person required to pay the tax is the one using the machine for profit, regardless of whether he is the owner or possessor thereof. The words of the ordinance prevent collection of more than one annual tax for each machine, regardless of how many people own or use it during the year. Section 2 provides that the tax shall be "an annual tax of Twenty ($20.00) Dollars for each machine or device". Once the tax is paid and a label affixed to the machine showing such payment, the user or owner is relieved from payment of any further similar tax on that machine for that year.

The claim that the tax is confiscatory was practically abandoned at the hearing and needs no discussion.

We also find that the claim that the ordinance makes an unreasonable classification is not justified. The legislature has power to select subjects for taxation, and the classification and the method of collection are legislative matters: Commonwealth v. Hudson Coal Co., 287 Pa. 64; Heisler v. Thomas Colliery Co. et al., 274 Pa. 448; Kniseley v. Cotterel, 196 Pa. 614; Commonwealth v. Girard Life Insurance Co., 305 Pa. 558; Philadelphia v. Sley System Garages, Inc., supra.

Neither do we think the ordinance is invalid because it authorizes the city treasurer to administer it. Article XI, sec. 3, of the Philadelphia City Charter Act of June 25, 1919, P. L. 581, 53 PS §3143, provides that the city treasurer shall demand and receive from the proper

officers all moneys payable to the city from whatever source, and pay all warrants and checks duly issued and countersigned. But this act does not create the office of city treasurer. It creates merely a department of city treasurer, of which the city treasurer shall be the head. The office of city treasurer was created by article XIV, sec. 1, of the Constitution, and the city treasurer is a county officer: Commonwealth v. Oellers, 140 Pa. 457.

Under article III, sec. 2, of the Philadelphia City Charter Act of June 25, 1919, city council was given the power to organize and reorganize any department of the city government. We see no objection to council permitting the city treasurer to administer this ordinance. The city treasurer's office has administered similar taxation under State statutes and is equipped and experienced for that duty. By the provision in question, council did not take away from any department any of its executive powers.

The presumption is that municipal officers have complied with the law. In this instance that presumption is supported by the testimony of the city treasurer that he conferred with the city controller on the ordinance and discussed with the controller his ideas as to how it should be handled. The presumption is further supported by the fact that the city controller has not made known to the court any objection to the ordinance or to the city treasurer's proposals with respect to administering it or to the validity of the ordinance, and has not intervened or asked to intervene in these proceedings. However, the propriety of the actions taken by the city treasurer is not involved in the questions now before this court and therefore we do not rule upon that specific question.

For the reasons above set forth, we are of the opinion the bill should be dismissed.

*Conclusions of law*

The chancellor draws the following conclusions of law:

1. As the ordinance of February 23, 1945, does not specifically provide to whom the tax shall be paid, under article XV, sec. 2, of the Philadelphia City Charter Act of June 25, 1919, P. L. 581, 53 PS §3232, the tax is payable to the receiver of taxes.

2. The Council of the City of Philadelphia had the power to authorize the city treasurer to administer the ordinance and to keep such records, prepare such forms, and take such additional measures—except the receiving of the taxes payable thereunder—as may be necessary or convenient to carry the ordinance into effect.

3. The said ordinance does not violate the provisions of the Philadelphia City Charter Act of June 25, 1919, P. L. 581, 53 PS §2901.

4. The tax imposed by the ordinance of February 23, 1945, is upon the "use for profit" of the machines or devices mentioned therein, for amusement or entertainment, which are operated by the insertion of a coin or token representing such coin, and the party who is to pay the tax for such "use" is any person, firm, corporation, or association either owning a machine which is used or permitted to be used for profit, or any person, firm, corporation, or association having such a machine which is being used or permitted to be used for profit, or any person, firm, corporation, or association which possesses any machine which is being used or permitted to be used for profit.

5. The tax imposed by the ordinance is not confiscatory.

6. The tax imposed by the ordinance is not unreasonable.

7. Council of the City of Philadelphia had the right to select and classify machines or devices, for amusement or entertainment, which are operated by insertion

of a coin or token representing such coin, for the purpose of taxing the "use" of such machines or devices.

8. The ordinance is legal, valid, and constitutional.

9. The bill in equity should be dismissed and the costs imposed upon plaintiff.

### Decree nisi

And now, to wit, May 4, 1945, this cause having been heard on bill and answer, it is ordered, adjudged, and decreed:

1. That plaintiff's bill is dismissed.

2. That plaintiff shall pay the costs of these proceedings.

The prothonotary will enter this decree nisi and give notice to the parties or their counsel of record, of the entry of the decree and, if no exceptions thereto are filed within 10 days thereafter, the decree nisi shall be entered as the final decree, by the prothonotary, as of course.