# Wiggins' Appeal.

1. The fact that the principal in a contract is not liable thereon by reason of her coverture, constitutes no defence in an action against a surety who has become such in view of the principal's disability.

2. A married woman holding shares in a building association prior to the enabling Act of April 10th 1879, Pamph L. 16, borrowed money from the association on her shares, and gave to secure the loan a mortgage on her individual property, and her husband's bond conditioned for the payment of the sum borrowed with interest, fines, premiums and monthly dues. Default being made by her in her payments of premiums and dues, judgment was entered against her husband on the bond. In an application by him to open the judgment.—*Held*, that though the wife was not liable by reason of her coverture, this fact constituted no defense on the part of the husband who had become his wife's surety in view of her disability.

March 22d 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

[Wiggins' Appeal.]

Appeal from the Court of Common Pleas, No. 1 of *Philadelphia county :* Of January Term 1882, No. 174.

This was an appeal by John Wiggins from a decree of the said court discharging a rule obtained by the appellant to show cause why a certain judgment entered against him should not be opened and he be let into a defence.

The facts of the case were as follows :—Ann Eliza Wiggins, wife of said John Wiggins, subscribed for and became the owner of ten shares of stock in the Park Loan and Building Association. On May 18th 1872, she obtained from the association a loan of $2,000, and in order to secure the same executed with her husband a mortgage to said association accompanied by a bond of her husband, the said John Wiggins, for $4,000, conditioned as follows :

"That, if Ann Eliza Wiggins, her heirs, executors and administrators or any of them shall and do well and truly pay, or cause to be paid unto the above named, The Park Loan and Building Association, their certain attorney successors and assigns, the just sum of $2,000, such as aforesaid, at any time within one year from the date hereof, together with lawful interest, and together with all fines imposed by the constitution and by-laws of the aforesaid association, and a monthly premium of $12.30, for the same, in like money, payable monthly, on the second Thursday of each and every month hereafter, and shall also well, and truly pay, or cause to be paid unto The Park Loan and Building Association aforesaid, their successors or assigns the sum of $10 on said second Thursday of each and every month hereafter, as and for the monthly contribution on ten shares of the capital stock of The Park Loan and Building Association aforesaid, now owned by the said Ann Eliza Wiggins, without any fraud or further delay, etc."

Ann Eliza Wiggins made payments according to the condition of the bond until February 18th 1880, when she defaulted. The association thereupon entered up the bond by virtue of the warrant of attorney annexed thereto, assessing the damages at $2,314.

John Wiggins thereupon procured a rule to show cause why the judgment should not be opened and he let into a defence. Depositions were taken, and after argument the rule was discharged. John Wiggins thereupon took this appeal, assigning for error the decree of the court.

*E. P. Smithers,* for appellant.—Prior to the Act of April 12th 1859 [P. L. 544], premiums on money loaned by Building and Loan Associations were deemed usurious and could not be recovered : Bechtold *v.* Brehm, 2 Casey 269 ; Kupfert *v.* The Guttenberg B. A., 6 Casey 465 ; Hughes' Appeal, 6 Casey

[Wiggins' Appeal.]

471; Reiser *v.* William Tell B. A., 3 Wright 137; Denny *v.* The West Phila. Ass'n, 3 Wright 154; Premium Fund Association's Appeal, 3 Wright 157. The provisions of this act legalize the payment of premiums and fines, and preserve such loans from the taint of usury only in case of dealings between an association and its members and were intended to regulate the dealings between members and the association, and not between it and those not members, or incapable of acquiring membership, such as married women: Wolbach *v.* Building Ass'n, 3 Norris 211.

A surety cannot be held for that part of the consideration of a contract which is usurious: Heidenheimer *v.* Mayer, 10 Jones & Spen. 506; Hartman *v.* Danner, 24 Smith 36.

The act of 1859 should receive a strict construction: Jarrett *v.* Cope, 18 Smith 67; Rhoads *v.* B. A., 1 Norris 180.

This case is distinguishable from Tanner's Appeal, 38 Leg. Int. 42, in that no part of the money loaned went into the hands of the husband or was used by him.

*S. N. Rich*, for appellee.—The stock belonged to appellant under the rulings in Robinson & Co. *v.* Wallace, 3 Wright 132; Baringer *v.* Stiver, 13 Wright 131; Raybold *v.* Raybold, 8 Harris 308; Bucher *v.* Ream, 18 P. F. Smith 421. The defence of coverture is purely a personal one on the part of a married woman. The husband cannot set it up as a defence to a joint bond given by her and himself: Shallcross *v.* Smith, 31 P. F. Smith 132; Unangst *v.* Fitler, 3 Norris 135; Tanner's Appeal, 38 Leg. Int. 42, rules the present case. The moral obligation of the married woman to repay the sum borrowed is sufficient consideration for the contract of suretyship: Hope Building Ass'n *v.* Lance, 6 W. N. C. 219; Leonard *v.* Duffin, 9 W. N. C. 155.

The court below, in the exercise of its reasonable discretion, refused to disturb the judgment against the appellant, and this court will not reverse for the exercise of a sound discretion: Earley's Appeal, 9 Norris 321; Wernet's Appeal, 10 Norris 319.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

Appellant's wife subscribed for ten shares of stock in the Park Loan and Building Association, on which in May 1872 she obtained a loan of $2,000. As security therefor she, in connection with her husband, executed a mortgage of real estate, the title to which was in her name. In addition thereto, ap-

pellant gave the bond with warrant of attorney on which the judgment in question was entered. In substance the condition of the bond is that she shall pay the association $2,000, with interest, all fines imposed by the constitution and by-laws of the association, a monthly premium of $12.30 and the monthly dues on her ten shares of stock.

The terms and conditions of the loan were neither usurious nor illegal. On the contrary, they were such as the association, under its charter, was authorized to make with any of its borrowing share-holders, and such as would be valid and binding on them, provided they were not under some legal disability, such as coverture, infancy, etc., that would render their contracts either void or voidable. Prior to the act of April 10th 1879, P. L. 16, married women were incapable of incurring all the liabilities usually assumed by borrowing stockholders. They might voluntarily pay dues, fines and premiums, but they were not personally liable on their contract to do so. Against that they were protected by the common law disability incident to coverture. In view of the legal incapacity of Mrs. Wiggins to bind herself personally by contract it was an important matter to the association that additional security, for the amount loaned on her stock, should be furnished. Hence, the bond of her husband, conditioned as above stated, was required by the association. In his examination in chief he says, " I gave this bond to the building society because they would not loan the money to my wife on her shares, unless the bond was attached to it. I had no interest in the shares standing in the name of my wife. $2,000 was received from the loan. I got no part of that money, nor was it appropriated to my use in any way. It was paid for my wife's property on which the mortgage, given with this bond, was secured." According to his testimony, therefore, he became security for the loan to his wife, the full benefit of which she received. If she had been sui juris, capable of binding herself to repay the loan in the manner contemplated, neither of them would have had the semblance of a defence. It is only because she has a defence personal to herself, grounded on her disability incident to coverture, that he seeks to avoid liability. This position is wholly untenable. As well might the surety of a minor endeavor to evade payment on the ground that his principal was incapable of contracting the debt by reason of minority. If Mrs. Wiggins had united with her husband in the execution of the bond and warrant of attorney and judgment had been entered thereon against both it would have been a nullity as to her but good as against him: Shallcross *v.* Smith, 31 P. F. Smith 132.

As has already been observed the contract was not tainted with illegality, nor was it ultra vires, so far as the association

[Laird v. Campbell.]

was concerned; and while it may be conceded that by reason of her disability it cannot be fully enforced against her personally, still there would be nothing inequitable in her paying or in the association receiving the full amount of its claim according to the terms and conditions of the loan. This being so, there appears to be no ground on which a defence can be based by her surety, who became such in view of her disability to contract, and consequent non liability to pay.

The order of court, refusing to open the judgment, is affirmed.