**R.W. SIDLEY, INC., Plaintiff,**

**v.**

**UNITED STATES FIDELITY & GUARANTY COMPANY, Defendants.**

**No. Civ.A. 3:01–404J.**

United States District Court, W.D. Pennsylvania.

Jan. 12, 2004.

---

Brian W. Ashbaugh, Rochelle R. Koerbel, Blumling & Gusky, Pittsburgh, PA, for Plaintiff.

Alan R. Krier, Wade D. Manley, Jubelirer, Carothers, Krier & Halpern, Altoona, PA, for Defendants.

## MEMORANDUM OPINION AND ORDER

GIBSON, District Judge.

This case comes before the Court for consideration of Defendant's Motion for Partial Summary Judgment (Document No. 23) and Plaintiff's Reply in Opposition to Defendant's Motion for Partial Summary Judgment (Document No. 27). For the following reasons, Defendant's Motion for Partial Summary Judgment is granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, R.W. Sidley, Inc., filed this action against the Defendant, United States Fidelity & Guaranty Company ("USF & G") on December 28, 2001. (Document No. 1). Plaintiff's claims arise out of a construction project undertaken in Allegheny Township, Altoona, Pennsylvania.

In July of 2000, the general construction contractor, Lawruk Builders, Inc., a Pennsylvania corporation, entered into an agreement with Blair County Convention Center & Sports Facility Authority ("Authority") for the construction of a project known as the Blair County Convention Center Parking Garage ("Project"). (Document No. 5). Pursuant to the provisions of the agreement and the Public Works Contractors Bond Law of 1967 ("Act"), Lawruk was required to provide a payment bond. (Document No. 7). On July 26, 2000, Lawruk purchased a joint and several Payment Bond ("Bond") from Defendant, USF & G. (Document No. 7). USF & G acted as a surety on the Project. Id.

On September 12, 2000, Plaintiff entered into a Subcontract Agreement ("Subcontract") with Lawruk to supply materials and labor to Lawruk in the nature of precast concrete components and erection thereof in connection with the Project. (Document No. 5). The amount of the Subcontract Agreement between Plaintiff and Lawruk was the sum of $2,476,000.00. (Document No. 5).

Plaintiff contends that the materials supplied for the Project were of good and merchantable quality, and Plaintiff further

argues that the precast concrete components were erected in a timely, workmanlike manner. (Document No. 5). Conversely, Defendant alleges that Plaintiff supplied the materials in an untimely manner, and that the materials were not of good mercantile quality necessitating repairs and rework. (Document No. 7).

At the time Plaintiff initiated this civil action, Plaintiff alleged that the remaining balance due Plaintiff from the general contractor, Lawruk, was $503,296.00. (Document No. 5). During the ongoing litigation of this civil action, however, Lawruk issued three separate payments to Plaintiff between May of 2002 and August of 2002. (Document No. 21). The total amount of these payments was $393,465.58. (Document No. 21). Plaintiff argues that Lawruk owes the remaining balance due on the Subcontract in the amount of $109,830.62. (Document No. 21).

On October of 2001, Plaintiff placed Defendant, USF & G, on notice that Lawruk failed to pay Plaintiff the requested amount alleged owed under the terms of the Subcontract. (Document No. 5). USF & G argues, however, that no sum is presently due Plaintiff because Lawruk incurred substantial backcharges as the result of Plaintiff's unsatisfactory job performance. (Document No. 7). Defendant has argued that no further payments are owing to Plaintiff. (Document No. 22). To date, Lawruk made three subsequent payments to Plaintiff that were withheld as a result of backcharges allegedly incurred by Lawruk. *Id.* USF & G asserts that the payments not made to Plaintiff represent legitimate backcharges under the Subcontract. *Id.* Thereafter, Plaintiff initiated this civil action against USF & G.

Plaintiff filed the following claims against USF & G pursuant to the Payment Bond: (1) Plaintiff is entitled to recover the full balance of its Subcontract with Lawruk totaling $109,830.62; (2) Plaintiff is entitled to recover damages for interest on the late payments at the rate of 1.5% per month and its unpaid Applications for Payment pursuant to the terms of the Subcontract between Lawruk and Plaintiff; (3) Plaintiff is entitled to recover a penalty amount at the rate of 1.0% per month on all outstanding amounts due pursuant to the Contractor and Subcontractor Payment Act, 73 P.S. § 501, *et seq.* ("Act") and/or the Commonwealth Procurement Code, 62 Pa.C.S.A. § 101, *et seq.* ("Code"); and (4) Plaintiff is entitled to recover attorneys' fees incurred in the course of this litigation pursuant to the Act and/or the Code. (Document No. 21).

On July 15, 2003, Defendant filed a Motion for Partial Summary Judgment arguing that Partial Summary Judgment is proper for the following reasons:

First, under Pennsylvania law, [Plaintiff] may not recover from the surety under the payment bond "interest" or "finance charges" based on a provision of the subcontract between [Plaintiff] and the principal contractor, Lawruk. Second, a claim for attorneys' fees and interest penalties pursuant to the Pennsylvania Contractor and Subcontractor Payment Act is inapplicable to sureties, such as USF & G. Third, a claim for attorneys' fees and interest penalties pursuant to the Commonwealth Procurement Code is also inapplicable to sureties.

(Document No. 23).

## II. DISCUSSION

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. *Id.* In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248-49, 106 S.Ct. 2505. In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

To demonstrate entitlement to summary judgment, the defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. The defendant needs only to point out the absence or insufficiency of the plaintiff's evidence offered in support of those essential elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once that burden has been met, the plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action.

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. *See id.* If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

It is on this standard that the Court has reviewed Defendant's motion.

1. **Interest Charges Set Forth in the Subcontract Agreement**

The issues raised by Defendant's Motion for Partial Summary Judgment require an examination of the Defendant's liability under the Public Works Contractors Bond Law of 1967, 8 P.S. § 191, *et seq.*, and the Payment Bond. The Public Works Contractors Bond Law of 1967 provides in pertinent part:

(a) Before any contract exceeding five thousand dollars ($5000) for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor:

(1) A performance bond at one hundred percent of the contract amount, con-

ditioned upon the faithful performance of the contract in accordance with the plans, specifications and conditions of the contract. Such bond shall be solely for the protection of the contracting body which awarded the contract.

(2) A payment bond at one hundred percent of the contract amount. Such bond shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract and shall be conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work. "Labor and materials" shall include public utility services and reasonable rentals of equipment, but only for period when the equipment rented is actually used at the site.

8 P.S. § 193(a)(1), (a)(2). The purpose of this statute is to protect contracting parties, including subcontractors, by assuring good faith performance of contracts. *Visor Builders, Inc. v. Devon E. Tranter, Inc.*, 470 F.Supp. 911 (M.D.Pa.1978).

Having reviewed the statutory language, examining the Bond is the proper place next step for the Court to take since the Bond, which was an undertaking between Lawruk and USF & G, created an independent liability with respect to future subcontractors as defined in the bond. *Knecht, Inc. v. United Pacific Ins. Co.*, 860 F.2d 74, 79 (3d Cir.1988); *see also Lite–Air Products, Inc. v. Fidelity & Deposit Co. of Maryland*, 437 F.Supp. 801 (E.D.Pa. 1977); *Monongahela Street Railway Co. v. Phila. Co.*, 350 Pa. 603, 39 A.2d 909 (1944).

In the case *sub judice*, the Plaintiff relies on the following language in the Payment Bond as a basis for recovery of interest on the late payments at the rate of 1.5%:

The PRINCIPAL and SURETY hereby, jointly and severally, agree with the obligee herein that any individual, firm, partnership, association or corporation, which has performed labor or furnished material in the prosecution of the work as provided, and any public utility which has rendered services in, or in connection with, the prosecution of such work, and which has not been paid in full therefor, may sue in assumpsit on this Payment Bond in his, their, or its own name and may prosecute the same to final judgment **for such sum or sums as may be justly due him**, them, or it, and have execution thereon. Provided, however, that the Municipality shall not be liable for the payment of any costs or expense of such suit.

(Document No. 27, Exhibit A). (Emphasis added). Plaintiff's contention is that through this language, specifically "for such sum or sums as may be justly due him", USF & G is liable for all the monies due from the principal, Lawruk, to Plaintiff under the terms of the Subcontract. In other words, Plaintiff argues that the Bond allows for recovery of the interest charges as provided for in the Subcontract. (Document No. 27).

Defendant contends that this civil action is predicated upon the terms of the Payment Bond and not upon Plaintiff's "breach of contract claims against Lawruk based on the terms of the [S]ubcontract." (Document No. 23). Furthermore, Defendant argues that the terms of the Bond in the case *sub judice* only covered costs of labor and materials allegedly owed to Plaintiff. *Id.* Defendant also asserts that bonds, as interpreted by Pennsylvania courts, do not allow for recovery against

sureties for the type of damages being claimed by Plaintiff. *Id.*

The Plaintiff counters that the "breadth of the language ... [that] serves to define 'what' [Plaintiff] can recover does not stem from the 'labor and materials' language of the bond, but from the 'justly due' language." (Document No. 27).

Defendant correctly points out that Pennsylvania courts have determined that bonds drafted to track the statutory language of the Public Works Contractors' Act do not permit recovery against sureties for service or finance charges that were included in subcontract agreements between a general contractor and subcontractor. *Lite–Air Products, Inc. v. Fidelity & Deposit Co. of Maryland,* 437 F.Supp. 801 (E.D.Pa.1977) (surety on bond covering "amount due the claimant for such labor or material" not liable for "finance charges" on late payments for materials because such charges are more akin to penalties or damages than they are related to the value of the materials); *Reliance Universal, Inc. of Ohio v. Ernest Renda Contracting Co.,* 308 Pa.Super. 98, 454 A.2d 39 (1982) (surety on bond covering cost of "all labor and material used" not liable for a 1.5% "service charge" for late accounts provided for in contract between contractor and supplier because not part of the "cost" of labor and materials); *Can–Tex Industries v. Safeco Insurance Company of America,* 460 F.Supp. 1022 (W.D.Pa.1978) (the surety bond could not be extended by the language in a subcontract under which the general contractor agreed to be liable for finance charges and attorney's fees upon default); *J.C. Snavely & Sons, Inc. v. Web M & E, Inc.,* 406 Pa.Super. 271, 594 A.2d 333 (1991) (surety on bond covering "sums as may be justly due" not liable for attorney fees and finance charges accrued under agreement between claimant and contractor because

not detailed in the payment bond); *Ragan v. Tri–County Excavating, Inc.,* 62 F.3d 501 (3d Cir.1995) (citations omitted, interpreting Pennsylvania law the "sums justly due" language utilized in the surety bond does not, as a matter of law, extend coverage under the bond to include attorney's fees or penalties).

■ Clearly, Pennsylvania law limits a surety's liabilities to those outlined in the bond itself. The Payment Bond in the case *sub judice* is silent as to interest payments that were provided for in the Subcontract between Lawruk and Plaintiff. This Court cannot impute an intent to cover interest payments beyond the statutory requirements of the Public Works Contractors' Act if it is not expressly included in the Payment Bond. No such language appears in the Payment Bond before this Court. Therefore, the Court determines that in the absence of an express provision in the Payment Bond, "finance charge" cannot be considered "sums justly due" and are not recoverable from a surety under Pennsylvania law. Accordingly, Defendant's Motion for Partial Summary Judgment with respect to Plaintiff's claims for interest under the Subcontract Agreement is granted.

## 2. Penalty Payments and Attorneys' Fees Pursuant to the Procurement Code

■ As an initial matter, the Public Contracts Act was repealed by the Pennsylvania Legislature effective November 15, 1998. See 73 Pa. Cons.Stat. §§ 1621–1631 (statute repealed on May 15, 1998, effective 180 days thereafter). The repealed provisions were recodified nearly verbatim in the Commonwealth Procurement Code, 62 Pa. Const. Stat. Ann. §§ 3931–3939 ("the Procurement Code"). Plaintiff's claims for penalty payments and

attorneys' fees under the Procurement Code, however, fail.

The statutory provisions identified by the Plaintiff, 62 Pa.C.S.A. §§ 3933, 3935, as bases for requesting penalties and attorneys' fees do not make any reference to the assessment of such costs against sureties. See also former provisions at 73 Pa.C.S. §§ 1626.2(c), 1626.5. To the contrary, these sections address the obligations of, and the assessment of said costs against, "the government agency, contractor or subcontractor." See 62 Pa. C.S.A. §§ 3935(a)-(b); see also id. at 3932(c) (addressing the "government['s]" payment of interest to "the contractor or design professional").

Other provisions of the Procurement Code (and the former Public Contracts Act), moreover, make express reference to the scope of sureties' potential liability. See 62 Pa.C.S.A. § 3939(b) ("Once a contractor" pays "the subcontractor according to the provisions" of the Code, "future claims for payment against the .... contractor's surety by parties owed payment from the subcontractor ... shall be barred.") See also former provision at 73 Pa.C.S. § 1626.9(b) (same). If the Legislature intended the provisions cited by Plaintiff to apply to sureties, it would have expressed such intent. Thus, the plain language of the Procurement Code does not support the Plaintiff's claims.

Nor does this Court find any reasoned basis to accept Plaintiff's interpretation that "the Code nowhere excludes sureties from its applicability". (Document No. 27). As the Defendant aptly points out "Pennsylvania law .... limits surety's obligations to those detailed in the bond". *Ragan v. Tri–County Excavating, Inc.*, 62 F.3d 501, 513 (3d Cir.1995). In the case *sub judice*, the Bond is silent regarding penalty interests or attorneys' fees. Moreover, the Court of Appeals for the Third Circuit has held that the "sums justly due" language utilized in the surety bond does not, as a matter of law, extend coverage under the bond to include attorneys' fees or penalties. *See Ragan*, 62 F.3d at 514–15 (citations omitted). Thus, the Court determines that Defendant's Motion for Partial Summary Judgment with respect to Plaintiff's claims for penalty interest and attorneys' fees under the Procurement Code is granted.

### 3. Penalty Payments and Attorneys' Fees Pursuant to the Act

▮ Plaintiff seeks an award of penalty payments and attorneys' fees under Pennsylvania's Contractor and Subcontractor Payment Act, 73 Pa. Cons.Stat. § et seq. (the "Act"). The purpose of the Act is to provide protection to contractors and subcontractors. *Net Const., Inc. v. C & C Rehab and Const., Inc.*, 256 F.Supp.2d 350, 356 (E.D.Pa.2003); *Nippes v. Lucas*, 815 A.2d 648, 651 (Pa.Super.2003).

The Act provides that "performance by a ... subcontractor in accordance with the provisions of a contract shall entitle the ... subcontractor to payment from the party with whom the ... subcontractor has contracted." 73 P.S. § 504. The Act also mandates that once the subcontractor has performed in accordance with the contract, the contractor must pay the subcontractor "the full or proportional amount received for [the] subcontractor's work and materials, based on work completed or services provided under the subcontract," either: (1) "14 days after receipt of each progress or final payment [from the owner];" or (2) "14 days after receipt of the subcontractor's invoice, whichever is later." 73 P.S. § 507(c). If a contractor violates the Act, a subcontractor may recover interest of one percent per month of the amount wrongfully withheld, and "the substantially prevailing party in any pro-

ceeding to recover any payment ... shall be awarded a reasonable attorney fee." 73 P.S. § 512.[1]

Plaintiff argues that the Act applies to sureties for essentially two reasons: (1) there is no "Pennsylvania caselaw which precludes the application of this Act to a surety"; (2) nor does the Act "exclude sureties from i[t]s application." (Document No. 27). The Court notes that the Pennsylvania Supreme Court has not yet interpreted the application of the Act to sureties. Thus, the Court must predict how the Pennsylvania Supreme Court would interpret the applicable provisions of the Act with respect to the case *sub judice.*

Under Pennsylvania's law of statutory construction, a statute's plain meaning prevails. In fact, the Court of Appeals has stated:

The interpretation of Pennsylvania statutes is governed by the state's Statutory Construction Act of 1972, 1 PA. CONS. STAT. ANN. §§ 1501–1991 (1995 Supp.). When interpreting statutory language, the Pennsylvania Supreme Court is guided by the 'plain meaning' rule of construction. *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583, 587 (1982) (citing 1 PA. CONS. STAT. ANN. § 1903(a)). [FN5] 'When the words of a statute are clear and free of ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' 1 PA. CONS. STAT. ANN. § 1921(b) (1995 Supp.).

*Hofkin v. Provident Life & Acc. Ins. Co.,* 81 F.3d 365 (3d Cir.1996).

This Court determines that similar to the provisions cited by Plaintiff under the Procurement Code, the provisions identified by the Plaintiff, 73 P.S. §§ 503, 507, and 512,[2] as bases for requesting penalties and attorneys' fees do not make any reference to the assessment of such costs against sureties. In construing the plain meaning of the language in these sections, the Court is bound to give effect to the sections of the Act according to the rules of grammar and according to the common and approved usage. *See Martin Media v. Commonwealth,* 661 A.2d 479, 481 n. 22 (Pa.Cmwlth.1995). This Court finds that the plain meaning of the sections of the Act is that a subcontractor may seek penalty payments and attorneys' fees against a contractor according to the provisions of their subcontract agreement. However, this Court also finds that the plain meaning of the sections of the Act does not address, or provide for, the recovery of such damages against a surety, namely Defendant. Therefore, the Court determines that Plaintiff's claims for penalties, interest and attorneys' fees under the Act fail and Defendant's Motion for Partial Summary Judgment is granted with regard to those issues.

## ORDER

**AND NOW,** this 12th day of January, 2004, in consideration of Defendant's Motion for Partial Summary Judgment and

---

1. A "contractor" means "a person authorized or engaged by an owner to improve real property." 73 P.S. § 502. A "subcontractor" is "[a] person who has contracted to furnish labor or materials to, or has performed labor for, a contractor or another subcontractor in connection with a contract to improve real property." *Id.*

2. 73 P.S. § 503 provides:

(a) Number of Residential Units- This Act shall not apply to improvements to real properties which consist of six or fewer residential units which are under construction simultaneously.

(b) Owner's Exclusion—This Act shall not apply to contracts for the purchase of materials by a person performing work on his or her own real property.

Plaintiff's Reply in Opposition to Defendant's Motion for Partial Summary Judgment, **IT IS HEREBY ORDERED** that the aforesaid Motion for Partial Summary Judgment is GRANTED with respect to Plaintiff's claims for interest payments, penalty payments, and attorneys' fees.